UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

United States of America

  v.           Criminal No. 17-cr-189-JD
               Opinion No. 2018 DNH 218

Roberto Mendoza-Sanchez

O R D E R

The United States charged Roberto Mendoza-Sanchez with one count of illegally reentering the United States after removal in violation of 8 U.S.C. § 1326(a). Mendoza-Sanchez pleaded guilty but now moves to withdraw his guilty plea and dismiss the indictment on the ground that he is legally innocent of the offense. The government objects.

Standard of Review

A defendant may withdraw his plea of guilty if he "can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). A colorable assertion that the defendant is legally innocent of the offense to which he pleaded guilty is among the factors to be considered when evaluating whether a defendant may withdraw his guilty plea. See United States v. Fernandez-Santos, 856 F.3d 10, 15 (1st Cir. 2017). The government does not appear to contest the facts alleged by

Mendoza-Sanchez or that the court should allow him to withdraw his guilty plea if those facts show that he is legally innocent.

## Background

Immigration authorities arrested Mendoza-Sanchez on May 7, 2014. On May 8, Mendoza-Sanchez was served with a notice to appear ("NTA") at a removal hearing at a date and time "[t]o be set." Doc. 27-1 at 1. On May 28, 2014, the government served Mendoza-Sanchez with a "notice of hearing" that included the date and time for the hearing, which was June 4, 2014. Mendoza-Sanchez appeared at the removal hearing on June 4, requested voluntary departure, and waived his right to appeal the immigration judge's findings.

The immigration judge denied Mendoza-Sanchez's request for voluntary departure and ordered removal. Mendoza-Sanchez was removed to Mexico on June 26, 2014. He was found back in the United States on November 28, 2017. The government thereafter brought the illegal reentry charges against Mendoza-Sanchez that are at issue in this case.

## Discussion

Mendoza-Sanchez argues that he is legally innocent because, under Pereira v. Sessions, 138 S. Ct. 2105 (2018), the NTA served on him was deficient. Because the NTA was deficient, Mendoza-Sanchez contends, the removal order was entered without

2

jurisdiction pursuant to 8 C.F.R. § 1003.14(a), which only vests subject matter jurisdiction in the immigration court when an NTA has been served. The government objects on the ground that Mendoza-Sanchez's challenge to the removal order is a collateral attack, and he does not meet the prerequisites listed under § 1326(d) for making a collateral attack.

A. Pereira's Effect on Immigration Courts' Subject Matter Jurisdiction

In Pereira, the Supreme Court addressed whether the "stop-time rule" is triggered when the government serves on a noncitizen an NTA that is defective. Pereira, 138 S. Ct. at 2109-10. A nonpermanent-resident noncitizen may be eligible for a disposition known as "cancellation of removal" if, among other requirements, he has been physically present in the United States for a continuous period of ten years or more. 8 U.S.C. § 1229b(b)(1)(A). The aptly-named "stop-time rule" stops the accumulation of time for cancellation of removal eligibility if the United States serves the noncitizen with an NTA. Id. § 1229b(d)(1)(A); Pereira, 138 S. Ct. at 2109.

The NTA, however, must inform the noncitizen about the time and place of the removal proceedings at which he is required to appear. 8 U.S.C. § 1229(a)(1)(G)(i). Considering this statutory provision, the Supreme Court in Pereira held that "[a] notice that does not inform a noncitizen when and where to

3

appear for removal proceedings is not a 'notice to appear under § 1229(a)' and therefore does not trigger the stop-time rule." 138 S. Ct. at 2110.

Relying on Pereira's holding that a defective NTA is "not" an NTA and 8 C.F.R. § 1003.14(a), which vests subject matter jurisdiction in the immigration court only when a noncitizen has been served with an NTA, some district courts have found that removal orders entered after a defective NTA are void for lack of subject matter jurisdiction. United States v. Virgen-Ponce, 320 F. Supp. 3d 1164 (E.D. Wash. 2018); United States v. Zapata-Cortinas, 2018 WL 4770868 (W.D. Texas Oct. 2, 2018). Therefore, in the view of those courts, any illegal reentry criminal charge premised on the void removal order must be dismissed. E.g., Virgen-Ponce, 320 F. Supp. 3d at 1166. Other courts, however, have rejected that conclusion if the government cured the defect in the NTA by timely informing the noncitizen about the date and time of his or her removal proceedings. See, e.g., United States v. Romero-Colindres, 2018 WL 5084877, at *2 (N.D. Ohio Oct. 18, 2018); United States v. Larios-Ajualat, 2018 WL 5013522, at *4-*6 (D. Kan. Oct. 15, 2018). No court of appeals has yet addressed the issue.

4

B. Application to Mendoza-Sanchez

The NTA the government served on Mendoza-Sanchez was deficient under Pereira because it did not provide a date and time for the removal hearing at which he was ordered to appear. Nevertheless, the government argues that Mendoza-Sanchez cannot challenge the validity of the removal order in this criminal proceeding because he fails to establish the prerequisites to make a collateral attack on a prior removal order specified by § 1326(d).

Under 8 U.S.C. § 1326(d), a noncitizen charged with illegal reentry under § 1326(a) can collaterally challenge a prior order of removal in the criminal proceeding, but only when three prerequisites have all been met. The defendant must demonstrate (1) that he "exhausted any administrative remedies that may have been available to seek relief against the order"; (2) that "the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review"; and (3) that "the entry of the order was fundamentally unfair." 8 U.S.C. § 1326(d).

Mendoza-Sanchez does not address the requirements of § 1326(d). Instead, he appears to assert that the court should follow the lead of cases such as Virgen-Ponce and declare the removal order void without requiring him to meet § 1326(d)'s prerequisites to collateral attack. Virgen-Ponce and Zapata-

5

Cortinas[1] are distinguishable because Mendoza-Sanchez was served with a supplemental notice that cured the defect in the initial NTA, ensuring that the immigration court had subject matter jurisdiction.[2] See Dababneh v. Gonzales, 471 F.3d 806, 809 (7th Cir. 2006) ("The fact that the government fulfilled its obligations under [§ 1229(a)] in two documents—rather than one—did not deprive the [immigration judge] of jurisdiction to initiate removal proceedings."); Guamanrrigra v. Holder, 670 F.3d 404, 410 (2d Cir. 2012) (holding that stop-time rule was triggered when the government cured defective NTA by serving second NTA that included date and time for hearing).

The court also disagrees with Virgen-Ponce and Zapata-Cortinas to the extent they held that a noncitizen need not meet § 1326(d)'s prerequisites for a collateral attack where the removal order is alleged to be void for lack of subject matter jurisdiction. Generally, a final order, even if issued without jurisdiction, remains effective until it is declared void through a direct attack or, when authorized, a collateral attack. See Chicot Cnty. Drainage Dist. v. Baxter State Bank,

---

[1] Zapata-Cortinas was issued after Mendoza-Sanchez submitted his motion to withdraw guilty plea.

[2] Virgen-Ponce and Zapata-Cortinas appeared at their removal hearings because they were in custody, but those cases did not address whether a supplemental notice would have cured a jurisdictional defect. See Virgen-Ponce, 320 F. Supp. 3d at 1165-66; Zapata-Cortinas, 2018 WL 4770868, at *1.

6

308 U.S. 371, 319-20 (1940) ("Whatever the contention as to jurisdiction may be, whether it is that the boundaries of a valid statute have been transgressed, or that the statute itself is invalid, the question of jurisdiction is still one for judicial determination."); Kalb v. Feurstein, 308 U.S. 433, 439 (1940) (describing state court bankruptcy orders that exceeded the courts' subject matter jurisdiction as "nullities subject to collateral attack"). Therefore, Mendoza-Sanchez must satisfy § 1326(d)'s requirements in order to challenge the validity of the removal order that underlies the illegal reentry charge.

As the government contends, Mendoza-Sanchez cannot meet § 1326(d) under the facts he alleges. First, Mendoza-Sanchez did not exhaust the administrative remedies available to him because he did not appeal the removal order to the Board of Immigration Appeals ("BIA"). See 8 C.F.R. 1003.3(b) (providing that a removal order issued by an immigration judge may be appealed to the BIA).

Second, Mendoza-Sanchez does not present any evidence or even argue that he was deprived of the opportunity for judicial review of the removal order. It is undisputed that Mendoza-Sanchez knowingly and voluntarily waived his right to appeal the removal order to the BIA and the First Circuit.

Third, because Mendoza-Sanchez had actual notice of the date and time of the hearing, the lack of a date and time on the

7

first NTA did not prejudice him, and, therefore, the entry of the removal order was not fundamentally unfair. See United States v. Luna, 436 F.3d 312, 320-21 (1st Cir. 2006) (observing that a defendant must show prejudice to render the entry of an order of removal fundamentally unfair under § 1326(d)(3)). The due process concerns advanced by the Supreme Court in Pereira do not apply when the government cures a defective NTA and the alien appeared at his removal hearing. See e.g., United States v. Fernandez, 2018 WL 4976804, at *1 (E.D.N.C. Oct. 15, 2018) ("[U]nlike in Pereira, defendant was personally served with a second NTA which included the specific date and time of her removal hearing. Defendant was also present at her removal hearing, unlike the defendant in Pereira."); Larios-Ajualat, 2018 WL 5013522, at *7 ("Defendant does not dispute that, unlike the alien in Pereira, he was in fact present at the removal hearing. . . . Absent from the motion [to dismiss] is any suggestion that he suffered prejudice from the lack of notice, which means Defendant's collateral challenge to the 2008 removal order is also barred by § 1326(d)(3)."). Because he does not satisfy any of the three prerequisites to make a collateral attack on the removal order, Mendoza-Sanchez cannot challenge the immigration court's order of removal in this proceeding.

## Conclusion

For the foregoing reasons, Mendoza-Sanchez's motion to withdraw his plea agreement and to dismiss the indictment (doc. 25) is denied.

SO ORDERED.

_/s/ Joseph A. DiClerico, Jr._
Joseph A. DiClerico, Jr.
United States District Judge

November 5, 2018

cc: Anna Z. Krasinski, Esq.
    Jonathan R. Saxe, Esq.
    U.S. Probation
    U.S. Marshal